# THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | )      Criminal No. 20-221 |
| vs. | ) |
| | ) |
| JORDAN COYNE | ) |

## JORDAN COYNE'S SENTENCING MEMORANDUM

AND NOW, comes the Defendant, Jordan Coyne, by his lawyer, William J. McCabe, Esquire, and submits the following Sentencing Memorandum. Mr. Coyne respectfully requests that the Court accept the written plea agreement proposed by the parties, which includes an §11(c)(1)(C) sentence of 18 months of incarceration.

## I.     BACKGROUND

1. Pursuant to a negotiated plea agreement with the Government, Mr. Coyne has accepted responsibility for and has pled guilty to violating the offense charged in Count 1 of the Indictment-Obstruction of Law Enforcement During Civil Disorder, in violation of 18 U.S.C. §§2 and 231(a)(3).

2. The plea agreement provides for an §11(c)(1)(C) sentence of 18-months, no fine; a term of supervised release of 3 years, and a special assessment of $100.00.

3. In addition, the plea agreement provides that the 18-month sentence will run concurrently with any sentence imposed in a parallel prosecution in Alleghney County based on the same offense conduct.

4. For guideline purposes, the FPO has determined that Mr. Coyne's total offense level is 18 (¶65), and his criminal history category is I[1]. (¶65)

---

[1] Mr. Coyne's criminal record includes only a summary disorderly conduct conviction in 2020, which did not score a criminal history point in the PSI.

    5. As a result, his advisory guideline range is 27 to 33 months. (¶65)

## II. DISCUSSION

### A. OVERVIEW

    6. Furthering the trend started by the United States Supreme Court in *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court restored the tremendous discretion that sentencing courts possessed prior to the promulgation of the sentencing guidelines. *Gall v. United States*, 522 U.S. 38, 128 S.Ct.586 (2007). Largely as a result of the Supreme Court's pronouncements in *Gall* and *Kimbrough v. United States*, 522 U.S. 85, 128 S.Ct. 558 (2007), the sentencing options available to district court judges were "significantly broadened." *United States v. Moon*, 513 F.3d 527, 544 (6th Cir. 2008), quoting *Gall*, 128 S.Ct. at 602. District courts are now free from any requirement that they mechanically adhere to the tight strictures of the guidelines and, importantly, sentencing courts are not required to even presume that the guidelines provide an appropriate sentence in a given case

    7. In *United States v. Gunter*, 462 F.3d 237, 246 (3rd Cir. 2006), the Third Circuit interpreted *United States v. Booker*, 543 U.S. 220 (2005) to require a district court to comply with the following three steps:

    (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before Booker;

    (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account the Third Circuit's Pre-Booker caselaw, which continues to have advisory force; and

(3) Finally, district courts are required to exercise their discretion by considering the relevant §3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence.

See also *United States* v. *Tomko*, 562 F.3d at 567; *United States v. Levinson*, 543 F.3d 190, 194-195 (3rd Cir. 2008); *United States v. Charles*, 467 F.3d 828, 830-31 (3rd Cir. 2006); *United States v. Jackson*, 467 F.3d 834, 837 (3rd Cir. 2006).

8. According to *Gall, Booker* and its related Third Circuit authority, in determining the minimally sufficient sentence, sentencing courts are required to consider the following 18 U.S.C. §3553(a) factors:

1) the nature and circumstances of the offense and the history and characteristics of the defendant;

2) the need for the sentence imposed –

(A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3) the kinds of sentences available;

4) the kinds of sentence and the sentencing range established for … the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; … and

5) the need to provide restitution to any victims of the offense.

9. The primary directive in Section 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2", as set forth above. This directive, commonly called "sentencing parsimony" is defined as the least restrictive sentence necessary to achieve the purposes of sentencing. *United States v. Dragon*, 471 F.3d 501, 503 (3rd Cir. 2006); See also *Kimbrough*, 128 S.Ct. at 575-576 (a district court's judgment that a particular defendant's sentence was sufficient but not greater than necessary is entitled to great weight, even if the district court's judgment is based in part of its disagreement with the policies behind an applicable guideline).

B. **NATURE AND CIRCUMSTANCES OF THE OFFENSE**

10. Mr. Coyne's offense conduct occurred on May 30, 2020 during the "George Floyd" public protest in Downtown Pittsburgh. He was caught on video damaging the windows of two police cars and the tail light of another; and throwing numerous items that struck police officers, including rocks, bricks, pieces of concrete, and a tear gas canister. The tear gas canister struck an officer in the hand, causing the officer's thumb to bleed and swell. Fortunately, no police officer was seriously injured as the result of his actions.

11. Mr. Coyne fully acknowledges, and accepts responsibility for his conduct.

C. **THE HISTORY AND PERSONAL CHARACTERISTICS OF THE DEFENDANT**

12. Mr. Coyne is currently 27 years old.

13. Mr. Coyne's parents were unmarried, and remained together for only a short time after his birth. His father was a drug addict and was physically and verbally abusive toward his

mother. Mr. Coyne never enjoyed any relationship at all with his father, who died at age 50 of a heart attack in 2014. (¶¶39-40)

14. Mr. Coyne maintained a close relationship with his mother, even though she struggled with alcoholism until 2009. She married and Mr. Coyne moved with her and her new husband to Massachusetts. He got along well with his step father, but his mother and step-father unfortunately divorced, which had a negative impact on Mr. Coyne, causing him at age 15 to do poorly in school and to begin experiencing mental health problems. (¶41)

15. Mr. Coyne was voluntarily committed to a psychiatric hospital in 2010 for suicidal ideations; he was diagnosed with Asperger's syndrome. In 2011, he ran away from home, and ended up again being involuntarily committed to a psychiatric hospital. Afterwards he was referred to the Glad Run Lutheran Services residential treatment facility in Zelienople, PA for intensive mental health treatment, and stayed for nine months, where he was diagnosed with bipolar and autism spectrum disorder, and placed on medications. (¶¶44-45)

16. Mr. Coyne attempted suicide in 2014 by running his car into a telephone pole, which resulted in another 90-day mental health commitment. (¶46)

17. He was subsequently referred to UPMC Mercy Behavioral Health – Life Care Hospital Residential Treatment Facility, where he remained until April 2016. At that point, he was released to supportive housing at Milestone Human Services, Wilkinsburg, Pennsylvania, where he lived for two years-until 2018, and attended weekly therapy and was prescribed Depakote and Abilify. The defendant subsequently attended weekly outpatient counseling for two years-until 2020 at Envision Human Services, Wexford, Pennsylvania, and was prescribed Zoloft, Concerto and Abilify. (¶46)

18. When the offense conduct occurred in this case-on May 30, 2020-he was not in active treatment. However, the defendant had been attending weekly outpatient treatment at Western Psychiatric Institute and Clinic, in Pittsburgh, Pennsylvania since March 2021. (¶47)

19. Unfortunately, after his change of plea in this case, and as the date of his initially scheduled sentencing hearing approached, Mr. Coyne's mental health condition worsened, culminating in a suicide attempt on June 6, 2022 for which he was briefly hospitalized. The June 6, 2022 suicide attempt caused a significant injury to the tendons of his left-hand requiring surgery to repair.

20. On June 13, 2022, Mr. Coyne sought treatment at Western Psych for his continuing deteriorating mental health condition, which resulted in his being admitted into a partial hospitalization program in the UPMC Bellefield Adult Intensive Outpatient Program.

21. He continues to struggle with mental health issues.

22. Fortunately, he has no history of illegal drug or alcohol drug use. (¶48)

23. Mr. Coyne has never been married. (¶42) He has been living with his fiancée for some time, and is employed in the food service industry.

24. His work history is consistent and productive. (¶¶52-60)

25. He graduated from high school in 2014, and earned a certificate in information technology from Parkway West Career Training Center in 2014. (¶¶49, 50)

26. He has very minimal assets. (¶¶62, 63)

27. His physical condition is good. (¶43)

28. Mr. Coyne has zero criminal history points. (¶34)

29. Prior to the offense conduct in this case, his only prior conviction was for a summary disorderly conduct charge. (¶33) Since the occurrence of his offense conduct in this case, Mr. Coyne has committed no other crime, and, per his FPO, he has been completely compliant with the terms and conditions of his pretrial release.

### D.  THE NEED FOR THE SENTENCE IMPOSED

30. Mr. Coyne respectfully submits that an 18 month sentence of incarceration, followed by five years of supervised release, would be sufficient, but not greater than necessary, to comply with the following purposes of sentencing in this case.

### 1.  TO REFLECT THE SERIOUSNESS OF THE CRIME, PROMOTE RESPECT FOR THE LAW, AND PROVIDE JUST PUNISHMENT FOR THE OFFENSE.

31. Mr. Coyne and the Government negotiated the stipulated 18-month sentence by comparing his criminal conduct to the criminal conduct of other similarly charged Defendants who have been sentenced by the Court.  Mr. Coyne submits that the 18-month stipulated sentence is proportional to his offense conduct in comparison to the defendants in U.S. v George Allen (20-168) (12 months and one day) and U.S. v Nicholas Lucia (20-174) (24 months), and appropriately reflects the seriousness of his conduct.   In addition, given Mr. Coyne's relatively young age; his lack of any serious criminal record; his willingness to accept full responsibility for his conduct; and the fact that he is now a convicted felon, it is respectfully submitted that a sentence of 18 months of incarceration will promote respect for the law, and provide just punishment to him.

## 2. TO AFFORD ADEQUATE DETERRENCE TO CRIMINAL CONDUCT

32. The Court may rest assured that, having never been incarcerated before, and now facing an 18-month sentence of incarceration, followed by three years of supervised release, Mr. Coyne's incarceration experience will deter him from any future criminal conduct. Mr. Coyne also understands that recidivism will lead to additional and more severe penal sanctions. The prospect of serving a future additional prison sentence will deter him from future criminal conduct. As for the public, a sentence of 18 months of incarceration as a punishment for Mr. Coyne's criminal conduct will send a clear message of deterrence to the public.

## 3. TO PROTECT THE PUBLIC FROM FURTHER CRIMES OF THE DEFENDANT

33. Mr. Coyne will be closely scrutinized by the federal government while incarcerated, and then while on supervised release for three years. There is simply no great need for the Court to take this factor into account given the enormous resources the federal government has at its disposal to ensure that Mr. Coyne will not reoffend.

## 4. TO PROVIDE THE DEFENDANT WITH NEEDED EDUCATIONAL OR VOCATIONAL TRAINING, MEDICAL CARE, OR OTHER CORRECTIONAL TREATMENT IN THE MOST EFFECTIVE MANNER

34. It is hoped that Mr. Coyne will receive adequate continuing mental health treatment from the BOP while incarcerated, and that mental health treatment will be required by the FPO while he is on supervised release.

E.   **THE KINDS OF SENTENCES AVAILABLE**

35. This Court has absolute authority to sentence the Defendant to an 18 month sentence of incarceration consistent with plea agreement, and the applicability of the factors identified in 18 U.S.C. § 3553(a).

F.   **THE ADVISORY GUIDELINE RANGE CALCULATION**

36. The advisory guideline range calculation by the FPO as set forth in the PSR is accurate.

### III.   RECOMMENDATION

In light of the foregoing, the Defendant, through his Counsel, respectfully requests that the Court accept the terms of the proposed plea agreement, and to impose a sentence of 18 months of incarceration, followed by three years of supervised release, which would be sufficient, but not greater than necessary, to comply with the purposes of sentencing in this case.

Respectfully submitted,

/s/ William J. McCabe

DeBERNARDO, ANTONIONO,
McCABE & DAVIS, P.C.
11 North Main Street
Greensburg, PA  15601
PA ID No. 32618
(724) 836-0700
Attorney for Defendant